UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/9/2021____

ANTHONY LOPEZ,

               Plaintiff,

               -against-

THE CITY OF NEW YORK, CAPTAIN AVON, DEPUTY WARDEN MITCHELL, and CHARLES APPIAH, Physician's Assistant,

               Defendants.

1:19-cv-03887-MKV

OPINION AND ORDER
GRANTING MOTION
TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

       Incarcerated *pro se* Plaintiff Anthony Lopez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Defendants The City of New York (the "City"), Captain Avin ("Avin"),[1] Deputy Warden Mitchell ("Mitchell"), and Physician's Assistant Charles Appiah ("Appiah") seeking damages for injuries in connection with a slip-and-fall in the shower area of the Manhattan Detention Complex ("MDC"). (Second Am. Compl. ("SAC") [ECF No. 20].) Defendants the City, Avin, and Mitchell (collectively, "Defendants") have moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss [ECF No. 26].)[2] For the reasons discussed below, the Court GRANTS Defendants' Motion to Dismiss and DISMISSES the claims against Appiah *sua sponte*.

---

[1] Defendants represent that Captain Avin is named incorrectly in the Second Amended Complaint as "Captain Avon." (Mot. Dismiss 1 n.1 [ECF No. 26].) Plaintiff concedes this error. (Pl.'s Opp. 1 [ECF No. 31].)

[2] The New York City Law Department, counsel for Defendants, does not represent Appiah but asks the Court to consider dismissing the claims against him *sua sponte*. (Mot. Dismiss 1 n.2.)

## BACKGROUND

### A.  Factual Background[3]

On December 28, 2018, at approximately 7:00 p.m., Plaintiff slipped and fell as he stepped out of the shower area in the MDC.  (SAC 4.)  Plaintiff lost consciousness from the fall.  (SAC 4.)  After he regained consciousness, Plaintiff remained on the floor unable to move due to a sharp pain in his head, neck, and back.  (SAC 4.)  The housing area officer called Avin and the medical response team, requesting assistance for a medical emergency.  (SAC 4.)  Upon her arrival, Avin "ordered Plaintiff to get up."  (SAC 4.)  Plaintiff responded that "he was in a lot of pain and that he couldn't move."  (SAC 4.)

The medical response team arrived shortly thereafter.  (SAC 4.)  Appiah, a physician's assistant, "demanded [Plaintiff] to get up."  (SAC 4.)  When Plaintiff advised him that he could not move, Appiah "grabbed the back of Plaintiff's head and stated, there is a little bit of blood but yor [sic] hair broke your fall, so you dont [sic] have a fracture."  (SAC 4.)  Plaintiff requested a neck brace, a bandage for his head, a stretcher to transport him to the medical clinic, pain medication, and an X-ray.  (SAC 4.)  Appiah stated that he would "not do[] anything for Plaintiff unless he stood up and walked to the clinic."  (SAC 4.)  Plaintiff then requested emergency medical services ("E.M.S.").  (SAC 4.)  Appiah responded that he would not call E.M.S. and that he was "tired of the slip and falls."  (SAC 4.)  Appiah and the medical team then left the shower area.  (SAC 4.)  After they left, Avin approached Plaintiff and stated, "'your [sic] faking' and Im gonna [sic] make sure [Deputy Warden] Mitchell does not call E.M.S."  (SAC 4.)

---

[3] The following facts are adduced from the Second Amended Complaint. The Court is "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

At approximately 9:00 p.m., the MDC locked down for the night.  (SAC 4.)  Plaintiff remained on the floor of the shower area and thought he was going to die.  (SAC 4.)  At approximately midnight, Plaintiff managed to walk to his cell.  (SAC 4.)  Plaintiff requested that the night officer contact the clinic.  (SAC 4.)  At approximately 2:00 a.m., the night officer gave Plaintiff two packs of nonaspirin and advised him that the clinic did not want to see him.  (SAC 4.)  After he demanded medical attention, correctional officers escorted Plaintiff to the clinic, but the doctor on duty denied medical treatment.  (SAC 4.)

Plaintiff alleges that he suffers from lumbar and cervical pain, radiculopathy, a laceration, and mental suffering as a result of the fall and continues to take pain medication as of November 2019.  (SAC 6.)

## B.  Procedural Background

Plaintiff commenced this action in April 2019, with the filing of a Complaint and a request to proceed *in forma pauperis* ("IFP").  (Compl. [ECF No. 2]; IFP Request [ECF No. 1].)  The Court (McMahon, *C.J.*) granted Plaintiff's IFP request (Order Granting IFP Request [ECF No. 4]) and directed Plaintiff to file an amended complaint (Order Amend [ECF No. 5]).  Chief Judge McMahon found that Plaintiff had failed to allege facts sufficient to state claims for municipal liability, deliberate indifference to conditions of confinement with respect to the slippery floor, or denial of adequate medical care.  (*Id.* at 3, 6–7.)  Chief Judge McMahon granted Plaintiff leave to amend the municipal liability claim and the claim for denial of medical care but not the claim regarding conditions of confinement.  (*Id.* at 3–4, 6–7.)

The case was thereafter reassigned to Judge Andrew L. Carter.  In July 2019, Plaintiff filed the Amended Complaint naming a John Doe doctor.  (Am. Compl. [ECF No. 7].)  Judge Carter entered an Order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), directing the City to

ascertain the identity of the John Doe defendant.  (Order Service [ECF No. 9].)  The City identified the John Doe doctor as Appiah.  (Letter [ECF No. 15].)  Plaintiff then filed the Second Amended Complaint.

The case was reassigned to me in February 2020.  Defendants moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed a brief in opposition.  (Pl.'s Opp. [ECF No. 31].)

## LEGAL STANDARDS

### A.  Rule 12(b)(6) Motion to Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

A complaint filed by a *pro se* plaintiff "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see also Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010) (noting that courts are "required to afford [a *pro se* plaintiff] leniency, holding his complaint to 'less stringent standards than formal pleadings

4

drafted by lawyers'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Nevertheless, the complaint must satisfy the *Twombly-Iqbal* plausibility standard. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80–81 (2d Cir. 2020). Thus, "a *pro se* plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Wightman–Cervantes v. ACLU*, No. 06 Civ. 4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000)).

**B.  Law of the Case Doctrine**

The law of the case doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, ___ U.S. ____, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). This principle "holds true even where a case has been reassigned to a new judge." *Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 314 (S.D.N.Y. 2013) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 733 F.2d 10, 13 (2d Cir. 1984)); *see also Lillback ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (internal quotation marks omitted) (noting that "courts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court" (citation omitted)). Under the law of the case doctrine, departure from a prior ruling is proper only where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (noting that "courts should be loathe to [revisit prior decisions] in the absence of extraordinary

circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice'" (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983))).

## C.  Section 1983

Section 1983 provides, in relevant part:

> "Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To state a claim under Section 1983, a plaintiff must plausibly allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## <u>DISCUSSION</u>

The Second Amended Complaint again fails to state a claim notwithstanding Plaintiff's additional factual allegations.  As it did before, the Court liberally construes the Second Amended Complaint as asserting claims for deliberate indifference to conditions of confinement, deliberate indifference to medical needs, and municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## A.  Conditions of Confinement

Insofar as Plaintiff's allegations suggest a claim for deliberate indifference to conditions of confinement relating to the slippery floor, that claim is clearly foreclosed by the law of the case doctrine.  Chief Judge McMahon dismissed that claim without leave to amend.  (Order Amend 6.)

6

Under the law of the case doctrine, Chief Judge McMahon's holding controls, and the Court will not revisit it here. *See Knox v. Countrywide Bank*, No.13-CV-3789, 2015 WL 5254519, at \*5 (E.D.N.Y. Jul. 29, 2015) ("Judge Bianco dismissed those claims and explicitly denied leave to amend, and thus amendment is barred by the doctrine of law of the case . . . ."), *report & recommendation adopted*, 2015 WL 52856738 (E.D.N.Y. Sept. 9, 2015), *aff'd*, 673 F. App'x 31 (2d Cir. 2016) (summary order); *see also Klaper v. Cypress Hills Cemetery*, No. 10–CV–1811 (NGG)(LB), 2014 WL 1343449, at \*4 (E.D.N.Y. Mar. 31, 2014) (noting that courts "may apply the law of the case doctrine to a legal determination made at the motion to dismiss stage" (collecting cases)).  Accordingly, insofar as the Second Amended Complaint re-pleads a claim for deliberate indifference to conditions of confinement by reason of the slippery floor, that claim fails.

## B.  Deliberate Indifference to Medical Needs

Plaintiff's additional factual allegations asserted in the Second Amended Complaint are insufficient to state a claim for deliberate indifference to medical needs.  A pretrial detainee's claim of deliberate indifference to medical needs is governed by the Due Process Clause of the Fourteenth Amendment.  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019).  To state a Fourteenth Amendment claim for deliberate indifference to medical needs, a detainee "must meet two requirements: (1) that Plaintiff[] had a serious medical need . . . , and (2) that the Defendants acted with deliberate indifference to such needs." *Charles*, 925 F.3d at 86 (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); and *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

A detainee's medical need is "sufficiently serious" where it "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  To determine whether a

medical need is sufficiently serious, courts "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

To satisfy the deliberate indifference requirement, a pretrial detainee "can allege either that the defendants knew [or that they should have known] that failing to provide the complained of medical treatment would pose a substantial risk to his health." *Charles*, 925 F.3d at 87.  Deliberate indifference is "more than mere negligence"; it "involves culpable recklessness, i.e., an act or failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Id.* (first quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996); then quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)).

The Second Circuit has made clear that "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703.  "Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).

Plaintiff has failed to state a claim for deliberate indifference to medical needs.  The Court cannot conclude that Plaintiff's medical need was sufficiently serious.  "Severe back pain can, in some circumstances, qualify as a serious medical need." *Buffaloe v. Fein*, No. 12 Civ. 9469(GBD)(AJP), 2013 WL 5815371, at *9 (S.D.N.Y. Oct. 24, 2013) (citations omitted).  But Plaintiff's conclusory allegation that he "felt a great deal of pain in his head, neck and back" (SAC 4) does not permit the Court to reasonably infer that Plaintiff's injury was sufficiently serious to state a constitutional claim. *See Sweeper v. Tavera*, No. 08 Civ. 6372(HB), 2009 WL 2999702, at

*6 (S.D.N.Y. Sept. 21, 2009) (dismissing complaint because "allegations of certain unspecified pain in [plaintiff's] head, back and knee and . . . that he had trouble walking" did not suggest a sufficiently serious injury); *see also Gillard v. Rovelli*, No. 9:09–cv–0860, 2010 WL 4905240, at *11 (N.D.N.Y. Sept. 29, 2010) (granting motion to dismiss where complaints of elbow pain for five years, back and spine pain, and ankle pain did not plausibly suggest the existence of a serious medical condition), *report & recommendation adopted*, 2010 WL 4945770 (N.D.N.Y. Nov. 24, 2010). Indeed, by his own admission, Plaintiff walked to his cell and then to the clinic within hours of the fall. *Cf. Price v. Engert*, 589 F. Supp. 2d 240, 246 (W.D.N.Y. 2008) ("[T]wo weeks after receiving his alleged injuries, plaintiff was able to play basketball, suggesting that he was not in serious pain and that his injuries did not interfere with his daily activities.").

Although it offers further detail as to Plaintiff's alleged injuries and the pain he suffers (*see* SAC 6), the Second Amended Complaint does not cure the defect identified by Chief Judge McMahon that Plaintiff fails "to allege any facts suggesting that he suffered a *specific injury* from the fall that required *specific treatment*." (Order Amend 7 (emphasis added).) *See Goodwin v. Kennedy*, No. CV 13–1774(SJF)(AKT), 2015 WL 1040663, at *13 (E.D.N.Y. Mar. 10, 2015) (alteration in original) (noting that "'[s]ubjective complaints of pain' are not, in and of themselves, sufficient to establish the existence of a serious medical need" (quoting *Thomas v. Nassau Cnty. Corr. Ctr.*, 288 F. Supp. 2d 333, 338 (E.D.N.Y. 2003))); *see also Jones v. Westchester County*, 182 F. Supp. 3d 134, 156 (S.D.N.Y. 2016) (dismissing deliberate indifference claim where, *inter alia*, the allegations were not specific as to the severity of the alleged injury); *Flemming v. Smith*, No. 9:11–CV–00804 (NAM/TWD), 2014 WL 3698004, at *7 (N.D.N.Y. July 24, 2014) (granting motion to dismiss where "[a]s with his original Complaint, Plaintiff has failed to allege facts making a plausible showing that his chronic back pain and hip and knee problems were severe

enough to constitute a serious medical condition"). Accordingly, Plaintiff has failed to allege plausibly a sufficiently serious medical need.

Even if his alleged medical need were sufficiently serious, Plaintiff has failed to show deliberate indifference. As an initial matter, Plaintiff alleges that he promptly received medical attention, was given nonaspirin in response to his complaints, and was escorted to the clinic within hours of his fall. (SAC 4.) Defendants' swift response to Plaintiff's fall weighs against a finding of deliberate indifference. *See Connors v. Heywright*, No. 02 Civ. 9988(DC), 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2003) (noting that "the supporting documents to [plaintiff's] complaint belie the claim of deliberate indifference because they show that prison officials promptly responded to his medical complaints"); *Santiago v. City of New York*, No. 98-cv-6543 (RPP), 2000 WL 1532950, at *6 (S.D.N.Y. Oct. 17, 2000) ("Plaintiff fails to state a constitutional claim because he received medical treatment promptly after he complained of pain." (citing *Rivera v. State of New York*, No. 96 Civ. 7697(RWS), 1999 WL 13240 (S.D.N.Y. Jan. 12, 1999))).

With respect to Appiah, Plaintiff's claim, as Chief Judge McMahon found, boils down to a "disagree[ment] over the treatment he required." (Order Amend 7.) The additional factual allegations in the Second Amended Complaint only further support this conclusion. Specifically, the Second Amended Complaint alleges that after Appiah advised Plaintiff that he did not have a fracture, Plaintiff requested a neck brace, a bandage for his head, a stretcher to carry him to the clinic, pain medication, and an X-ray. (SAC 4.) But Appiah concluded that Plaintiff could walk to the clinic and further emergency intervention was unnecessary because Plaintiff did not have a fracture. (SAC 4.) Plaintiff affirmatively alleges that he did, in fact, walk back to his cell and later walk to the clinic with an escort provided. (SAC 4.) The doctor on duty confirmed that no medical intervention was required. (SAC 4.) "These allegations, at most, reflect a disagreement with the

course of medical treatment provided to [Plaintiff, which] . . . does not amount to deliberate indifference." *Weathermax v. Barone*, No. 3:19cv1502(KAD), 2020 WL 1677069, at *3 (D. Conn. Apr. 6, 2020) (collecting cases); *see Rodriguez v. Corizon Health Care*, No. 15 Civ. 5251 (GBD) (GWG), 2016 WL 3189960, at *5 (S.D.N.Y. June 6, 2016) (finding that allegations failed to state a claim for deliberate indifference because they "simply reflect[ed] a disagreement between [plaintiff] and his medical practitioners as to whether he was in need of further treatment" (collecting cases); *Scott v. Laux*, No. 07–CV–936, 2008 WL 4371778 at *4 (N.D.N.Y. Sept. 18, 2008) ("[D]isagreements over . . . diagnostic techniques (e.g., the need for X-rays) . . . are not adequate grounds for a § 1983 claim." (quoting *Magee v. Childs*, No. 04–CV–1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006))).

Plaintiff has also failed to show deliberate indifference by Captain Avin and Deputy Warden Mitchell.  Plaintiff's claim against these Defendants is essentially predicated on their alleged failure to second-guess Appiah's medical judgment.  Specifically, Plaintiff alleges that Avin and Mitchell "deliberately refused to notify [E.M.S.]" *after* Appiah had evaluated Plaintiff.  (SAC 6.)  It is well established that "[c]orrection officers who defer to the judgment of medical professionals on such matters are only liable if the plaintiff pleads facts demonstrating that the 'nonmedical defendant should have challenged the medical professionals' decisions.'" *Feliciano v. Anderson*, 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *14 (S.D.N.Y. Mar. 30, 2017) (quoting *Smith v. Wilson*, No. 9:12-CV-1152 (MAD), 2013 WL 5466857, at *9 (N.D.N.Y. Sept. 30, 2013)).  Plaintiff does not allege that Avin or Mitchell had any medical training or reason to question the judgment of Appiah and the medical response team, including their diagnosis and treatment of Plaintiff, which renders Plaintiff's claims "facially deficient." *Frank v. Dep't of Corr. & Cmty. Supervision*, 9:18-CV-1047 (GTS/DJS), 2019 WL 1100109, at *4 (N.D.N.Y. Mar. 8,

2019); *Butler v. Smith*, No. 9:07-CV-0431 (FJS/DEP), 2008 WL 4186338, at *6 (N.D.N.Y. Sept. 10, 2008). Because under the circumstances it was reasonable for Avin and Mitchell to defer to the expertise and judgment of trained medical personnel, the Court cannot infer that they demonstrated deliberate indifference. *See Gonzalez v. Sarreck*, No. 08-CV-3661, 2011 WL 5051341, at *14 (S.D.N.Y. Oct. 24, 2011) ("Non-medical Defendants . . . may not be held liable on a deliberate indifference claim unless a plaintiff can show that [they] should have challenged a doctor's diagnosis." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000))); *see also Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (finding no deliberate indifference where there was "no evidence that the committee members had medical training or were otherwise aware that the decision to defer to [the regional medical doctor] might not be responsive to [plaintiff's] true medical needs"); *Nix v. Lester*, No. 9:16-CV-0828 (FJS/TWD), 2017 WL 3610576, at *8 (N.D.N.Y. Aug. 4, 2017) (recommending dismissal of claims against correctional officers who were present during alleged inadequate treatment, noting that, as "non-medical professionals, [they] were entitled to rely on the opinion of medical staff"), *report & recommendation adopted sub nom.*, *Nix v. Doe*, 2017 WL 3601239 (N.D.N.Y. Aug. 21, 2017); *Libbett v. Doody*, 686 F. Supp. 2d 271, 278–79 (W.D.N.Y. 2010) (noting that "it would hardly be reasonable to expect [defendants] to question [Dr. Latunji's] judgment or to credit plaintiff's contention that Dr. Latunji's course of treatment was somehow deficient").

Plaintiff argues in his brief that Appiah's alleged remarks that Plaintiff's "hair broke [his] fall" and that he was "tired of the slip and falls" should have alerted Avin and Mitchell to the inadequacy of Appiah's medical evaluation of Plaintiff. (Pl.'s Opp. 10.) But these allegations were raised in the initial Complaint and deemed insufficient to state a plausible claim by Chief Judge McMahon. Thus, under the law of the case doctrine, they cannot suffice to state a claim

12

here.  *See DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994) (noting that the law of the case doctrine "applies to issues that have been decided either expressly or by necessary implication" (quoting *Doe v. N.Y.C. Dep't of Social Servs.*, 709 F.2d 782, 788 (2d Cir. 1983)); *see also U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, No. 15-CV-4961 (LTS) (JLC), 2020 WL 2530180, at *5 (S.D.N.Y. May 19, 2020) (noting that where "an issue has been expressly or impliedly resolved in a previous stage of the same case, the law of the case doctrine is the appropriate vehicle for analysis" (citing *Manolis v. Brecher*, 634 F. App'x 337, 338 (2d Cir. 2016) (summary order))); *Ammar Textile (Pvt) Ltd. v. Contitrade Servs. Corp.*, No. 93 Civ. 237 (CSH), 1994 WL 115993, at *3 (S.D.N.Y. Mar. 30, 1994) (finding that law of the case doctrine compelled dismissal despite earlier dismissal without prejudice because the "present complaint reasserts the same claim, setting forth essentially the same facts").  Accordingly, Plaintiff has not shown that Avin and Mitchell acted with deliberate indifference.

## C. *Monell* Liabilty

Plaintiff also fails to state a claim against the City.  A municipal defendant "cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691; *see Reynolds v. Giuliani*, 506 F.3d 183, 190–91 (2d Cir. 2007) (noting that "§ 1983 rejects the imposition of vicarious liability on a municipality for the torts of its employees" (collecting cases)).  Rather, a municipal defendant may be liable only where "execution of a government's policy or custom" causes constitutional violations.  *Monell*, 436 U.S. at 694; *see Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002) (noting that to determine municipal liability, courts must "conduct a separate inquiry into whether there exists a 'policy' or 'custom'"), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) (summary order).  A plaintiff can plead a "policy" or "custom" by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).   An underlying constitutional violation is a prerequisite to municipal liability.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Here, because Plaintiff has failed to allege a constitutional violation, his claim against the City necessarily fails.  *See id.* ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Tyk v. Police Officer Eric Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) (summary order) ("Because [plaintiff] has not established an underlying violation of his constitutional rights, his § 1983 claims against the City necessarily fail." (citing *Segal*, 459 F.3d at 219)).

Even if Plaintiff plausibly alleged a constitutional violation, his *Monell* claim would nonetheless fail.  "A *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice." *Pittman v. City of New York*, No. 14–CV–4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014) (citing *Gordon v. City of New York*, No. 10–CV–5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012); and *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012)).  As Chief Judge McMahon previously found, Plaintiff has not identified a policy or custom of the City that caused

his alleged injury.  (Order Amend 3.)  The allegations in the Second Amended Complaint that the City failed to "install a drainage at the entrance of the shower" and maintained policies that allowed Avin, Mitchell, and Appiah to provide inadequate medical treatment (SAC 5) are too conclusory to withstand a motion to dismiss.  *See Estevez v. City of New York*, No. 16-cv-00073 (JGK), 2017 WL 1167379, at *7 (S.D.N.Y. Mar. 28, 2017) (dismissing *Monell* claims where plaintiff allegedly fell in shower area due to poor drainage and received inadequate medical care because the "allegations attempting to link a policy or custom to an injury [we]re boilerplate and conclusory"); *Seymore v. Dep't of Corr. Servs.*, No. 11 Civ. 2254(JGK), 2014 WL 641428, at *8 (S.D.N.Y. Feb. 18, 2014) (dismissing *Monell* claim arising from alleged slip and fall in bathroom area "because the plaintiff has not alleged any facts that connect his asserted injuries to any training, policy, or custom on the part of the City"); *LaPerre v. County of Nassau*, No. CV 08-1642 (SJF)(ETB), 2009 WL 10670335, at *7 n.2 (E.D.N.Y. Nov. 13, 2009) (finding that "conclusory assertions without specific allegations of fact to support them" by plaintiff who allegedly slipped and fell in shower area and received inadequate medical care were insufficient to state *Monell* claim).  Accordingly, Plaintiff's claim against the City fails.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Motion to Dismiss filed by Defendants The City of New York, Captain Avin, and Deputy Warden Mitchell and DISMISSES the claims against Physician's Assistant Charles Appiah *sua sponte*.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, DENIES *in forma pauperis* status for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully requested to terminate docket entry 26, mail a copy of this Order to the *pro se* Plaintiff, and close the case.

**SO ORDERED.**

**Date:  February 9, 2021**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**